# EXHIBIT N

1  Brett D. Szmanda (SBN 288688)
   brett@szmandalaw.com
2  Matthew J. Gustin (SBN 310714)
   matt@szmandalaw.com
3  **Szmanda Law Group, P.C.**
4  18377 Beach Blvd., Suite 211
   Huntington Beach, California, 92648
5  Telephone: (714) 369-6861
   Facsimile: (360) 851-7730
6

7  Attorneys for Plaintiff Dirk Clinton

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**08/16/2017** at 03:50:56 PM
Clerk of the Superior Court
By Sarah Loose,Deputy Clerk

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                     **FOR THE COUNTY OF ORANGE**

10                        **CIVIL COMPLEX CENTER**

11  DIRK CLINTON, on behalf of himself      ) Case No.:   30-2017-00938102-CU-OE-CXC
    and as a Representative of the People of ) Judge:      Judge Kim G. Dunning
12  the State of California,                 )                CX104
                                             ) **COMPLAINT FOR PENALTIES,**
13                                           ) **INJUNCTIVE RELIEF AND OTHER**
14                         Plaintiff,        ) **EQUITABLE RELIEF**
                                             )
15       v.                                  ) **CAUSES OF ACTION**
                                             )
16                                           )
17  AMAZON.COM, INC.; AMAZON                 ) 1) Civil Penalties Pursuant to Labor Code §§
    LOGISTICS, INC.; and DOES 1-20,         )    2698 et seq.: (Private Attorneys General Act);
18                                           )    and
19                         Defendants.       ) 2) Violation of California Business & Professions
                                             )    Code §§ 17200, et seq. (Public Injunctive
20                                           )    Relief to Prevent Unfair Competition);
                                             )
21                                           )
22                                           ) **Demand for Jury Trial**

23

24

25

26

27

28

Plaintiff Dirk Clinton (hereinafter "Plaintiff"), alleges as follows:

### INTRODUCTION

1)      This action arises out of harm suffered by Plaintiff and caused by Defendants Amazon.com, Inc.'s, (hereinafter "Defendant Amazon.com"), and Amazon Logistics, Inc.'s (hereinafter "Defendant Amazon Logistics") (collectively referred to herein as "Defendants") unlawful employment practices in violation of California Public Policy; the California Labor Code; and California Business & Professions Code sections 17200, et seq.

2)      Plaintiff also seeks to serve as a representative of the general public to enforce and uphold California's wage and hour laws as a private attorney general as expressly permitted by California Labor Code §§ 2698 et seq., pursuant to the Private Attorneys General Act of 2004 ("PAGA"), and has complied with the required notice provisions.

3)      On or about June 9, 2017, Plaintiff gave written notice to Defendants and to the California Labor and Workforce Development Agency ("LWDA") by certified mail. Plaintiff waited in excess of sixty-five days for Defendants to take remedial action or for the LWDA to intervene in accordance with California Labor Code § 2699.3(c).

### JURISDICTION AND VENUE

4)      Venue is proper in this Judicial District and Orange County because Defendants maintain offices and transact business in Orange County, and most of the alleged harm made the subject of this action occurred in or around Irvine, California.

5)      On information and belief, the California Superior Court has jurisdiction in this matter because Plaintiff and Defendants are California Citizens and because the amount in controversy in this matter does not exceed $75,000 for Plaintiff or any other delivery driver.

6)      The amount in controversy in this matter exceeds the sum of $25,000, exclusive of interest and costs.

### PARTIES

7)      Plaintiff is a California citizen residing in Orange County, California.

8)      Defendants, on information and belief, are, and at all relevant times herein, were, corporations organized and existing under the laws of the State of Washington and authorized to do

business under the laws of the State of California and doing business within the State of California, including, but not limited to, Orange County.  At all relevant times herein, Defendants were subject to the Labor Code of the State of California and to the applicable Order of the Industrial Welfare Commission ("IWC") promulgated by the Commission pursuant to and by virtue of the authority vested in it by §§ 1171 through 1204 of the Labor Code and Article 14, Section 1 of the Constitution of the State of California.

9)    Defendants have employed Plaintiff as a delivery driver since around March of 2017.

10)    Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1–20, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and based thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned defendants.

11)    Plaintiff is informed and believes, and based thereon alleges that Defendants and DOES 1-20 are subsidiaries or predecessors in interest of one another. In the alternative, Plaintiff alleges that if Defendants and DOES 1-20 are not subsidiaries or predecessors in interest of one another, that Defendants and DOES 1-20 are an integrated enterprise in that there is an interrelation of operations between Defendants and DOES 1-20, there is common management between Defendants and DOES 1-20, there is centralized control of labor relations between Defendants and DOES 1-20, and there is common ownership or financial control between Defendants and DOES 1-20.

12)    Plaintiff is informed and believes, and thereon alleges that if Defendants and DOES 1-20 are not subsidiaries or predecessors in interest to one another, or if Defendants and DOES 1-20 are not an integrated enterprise, that Defendants and DOES 1-20 have acted as joint employers with respect to the Plaintiff and its other delivery drivers because Defendants and DOES 1-20 have:

　　a.    jointly exercised meaningful control over the work performed by the Plaintiff and its other delivery drivers;

b.  jointly exercised meaningful control over the Plaintiff's and its other delivery drivers' wages, hours and working conditions, including the quantity, quality standards, speed, scheduling, and operative details of the tasks the Plaintiff and its other delivery drivers performed;

c.  jointly required the Plaintiff and its other delivery drivers to perform work which is an integral part of the businesses of Defendants and DOES 1-20; and

d.  jointly exercised control over the Plaintiff and its other delivery drivers in that the Plaintiff and its other delivery drivers, as a matter of economic reality, are dependent upon Defendants and DOES 1-20, who shared the power to set the Plaintiff's and its other delivery drivers' wages and determine their working conditions, and for other related reasons.

13)  Plaintiff is informed and believes, and based thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or are attributable to, Defendants and DOES 1-20, each acting as the agent for the other, with legal authority to act on the other's behalf. The acts of any and all Defendants and DOES 1-20 were in accordance with, and represent the official policies of Defendants and DOES 1-20. At all times herein mentioned, Defendants and DOES 1-20, and each of them, ratified each and every act or omission complained of herein. At all times herein mentioned, Defendants and DOES 1-20, and each of them, aided and abetted the acts and omissions of each and all the other Defendants and DOES 1-20 in proximately causing the damages herein alleged.

14)  Plaintiff is informed and believes, and based thereon alleges, that each of said Defendants and DOES 1-20 is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

## FACTUAL ALLEGATIONS

15)  Plaintiff has worked for the Defendants from around March of 2017 until the present as a delivery driver.

16)  Plaintiff works out of the Defendants' distribution center located in Irvine, California.

17)  Plaintiff works for Defendants through their Amazon Flex program, launched in 2015, which recruits individuals to earn money delivering packages for Defendants.

18)  All of the delivery drivers for Amazon Flex, including Plaintiff, are misclassified as independent contractors, when they should be classified as employees.

19)   Defendants exercise great supervision and control over each and every one of Plaintiff's and the other delivery drivers' job duties.

20)   In addition to selling consumer goods and other products through their internet marketplace, the Defendants are in the business of providing delivery services to other companies and individual sellers.

21)   The Defendants' delivery drivers are an integral part of the delivery service they provide to these customers.

22)   A portion of the Defendants' delivery services are provided through their Amazon Flex program.

23)   In order to work for Defendants through their Amazon Flex program, Plaintiff and the other delivery drivers must download the Amazon Flex mobile application (the "App").

24)   Through the App, Defendants provide the logistical support needed for Plaintiff and the other delivery drivers to perform their work.

25)   To use the App, Plaintiff and the other delivery drivers must grant permissions on their smartphones to allow push notifications, camera access, and locations services.  Plaintiff and the other delivery drivers cannot work for the Defendants without downloading the App and granting these permissions.

26)   Defendants schedule shifts by offering three-to-four-hour "blocks" that Plaintiff and the other delivery drivers can accept through the App.

27)   The Defendants also use the App to track the movements of Plaintiff and the other delivery drivers, and to direct them to follow strict routes when making deliveries.

28)   Plaintiff and the other delivery drivers have to watch a series of training videos which detail the strict policies and procedures that they are to follow when performing each and every one of their job duties, down to the smallest detail, and for which they can be terminated for breaking.

29)   Plaintiff and the other delivery drivers are required to "check-in" on the App when they arrive at Defendants' distribution centers for the start of their shifts.

30)   Plaintiff and the other delivery drivers must check-in no earlier than 15 minutes

- 4 -

before the scheduled start time and no later than 5 minutes after the scheduled start time for their shift.

31)    Plaintiff and the other delivery drivers are required to show a security guard their driver's licenses prior to entering the loading facility.  Defendants also provide Plaintiff and the other delivery drivers with a vest and an Amazon badge to wear during their shifts.

32)    Once inside the loading facility, Plaintiff and the other delivery drivers are required to put their emergency flashers on and honk their horn as they enter the warehouse, make a turn in the warehouse, or exit the warehouse.

33)    Plaintiff and the other delivery drivers are then directed to enter a specific lane within the warehouse, where they receive the set of packages to be delivered during that shift.

34)    Prior to loading the packages into their vehicles, Plaintiff and the other deliver drivers are required to scan each package, or bag of packages, into the App.

35)    Once the packages are loaded and the routes are optimized, Plaintiff and the other delivery drivers have to proceed through the exit line and wait until the Defendants let them leave the loading station. Although their vehicles are completely loaded and they are ready to start making deliveries, the Defendants will often force Plaintiff and the other delivery drivers to wait until the cars in front of them in line are done loading.  If Plaintiff and the other delivery drivers attempt to reverse to get out of line early, or break any of the Defendants' other strict rules, they are subject to immediate termination.

36)    While they are out delivering packages, the Defendants provide detailed directions through the App on what Plaintiff and the other delivery drivers are to do next during their shifts.

37)    Plaintiff's and the other delivery drivers' real-time GPS locations are televised openly at the loading station, allowing the Defendants to monitor their locations at all times and to ensure that they are delivering the packages in strict compliance with the Defendants' instructions.

38)    While working for the Defendants, Plaintiff and the other delivery drivers are not allowed to have other people in the vehicles with them.

39)    Once at each delivery location, Plaintiff and the other Delivery drivers have to follow strict procedures when leaving packages at their destinations.

40)     Plaintiff and the other delivery drivers are required to check in at a specified geographical location surrounded by a "geo-fence" prior to delivering each package.  When delivering to a large complex this geo-fence is typically at the front of complex, when the physical delivery must be made at another location.  This often prevents Plaintiff from making his deliveries as he would choose, in an efficient manner.

41)      If delivery cannot be made directly to the recipient, Plaintiff and the other delivery drivers are required to leave the packages on a certain spot on the porch, then take a picture of the package.

42)     Plaintiff and the other delivery drivers are required to log deliveries into the App as they are completed.

43)     When they cannot locate a safe place to leave a package, Plaintiff and the other delivery drivers must follow a three-step procedure. They must call the customer, and then if there is no answer call the Defendants to see if they can find a resolution.  If no resolution is found, the Defendants instruct Plaintiff and the other delivery drivers to return the packages to the warehouse.

44)     Plaintiff and the other delivery drivers are required to accept the entire set of packages that Defendants assign to be shipped during each shift, even if Plaintiff and the other delivery drivers know that they will not be able to make all such deliveries in the time allotted.

45)     Plaintiff and the other delivery drivers are not engaged in a distinct occupation or business, as they are not typically delivery drivers by trade.

46)     The services Plaintiff and the other delivery drivers provide are the kind of work typically done by an employee under the direction of an employer, such as UPS, FedEx, or the Postal Service.

47)     Plaintiff is informed and believes, and based thereon alleges, that prior to launching Amazon Flex, and still, most of Defendants' delivery services are provided through securing contracts with third-parties who use employee drivers.

48)     Plaintiff is informed and believes, and based thereon alleges, that most delivery services in the Southern California area are provided by employee drivers.

49)     The delivery services provided by Plaintiff and the other delivery drivers are not

1  specialized or technical in nature, and no prior training or experience is required before the

2  Defendants will hire them.

3      50)    The Defendants provide the instrumentalities and tools necessary for Plaintiff and

4  the other delivery drivers to perform their duties, such as the App.  The App is the main tool used

5  by Amazon Flex drivers, and provides the interface for the enormous amount of logistical support

6  the Defendants provide.  The Amazon Flex program would not be able to function without the App.

7      51)    Defendants maintain the loading and unloading station, which serves as the base of

8  operations for Plaintiff and the other delivery drivers.

9      52)    Furthermore, although the Defendants have misclassified the employee delivery

10  drivers as independent contractors, the employment relationship is apparent to Plaintiff and the

11  other delivery drivers as well as the managers, who tell Plaintiff and the other delivery drivers they

12  will be fired if they do not follow the Defendants' strict directions and procedures.

13      53)    During the recruiting process, Plaintiff's and the other delivery drivers'

14  compensation is repeatedly advertised as between $18-$25 per hour.

15      54)    Due to the volume of packages and inefficiencies in the App, Plaintiff and the other

16  delivery drivers are oftentimes unable to deliver the required packages within the time period such

17  that they are able to make the advertised rate of compensation.

18      55)    Plaintiff and the other delivery drivers are paid $54 for each "3-hour block" worked.

19  For longer blocks, they are paid an additional $9 for each half hour.  In limited circumstances this

20  rate will be increased by Defendants.

21      56)    When Plaintiff and the other delivery drivers start work for their shifts, they are

22  required to arrive at the loading facility early and wait in a line prior to checking in.

23      57)    Only when Plaintiff and the other delivery drivers are within the "geo-fence"

24  surrounding the loading facility, they are able to check-in on the App for their block.  They are not

25  compensated for time spent at the facility prior to being able to check-in on the App.

26      58)    To accommodate the wait prior to checking-in to the loading facility, Plaintiff and

27  the other delivery drivers are required to arrive up to 30 minutes prior to their scheduled start times.

28      59)    Plaintiff and the other delivery drivers are oftentimes unable to finish delivering their

1    set of packages prior to the expiration of their scheduled shift.  Rather, Defendants take great efforts

2    to ensure that Plaintiff and the other delivery drivers have so many packages that they will be

3    working during the entirety of each scheduled shift.

4        60)    Once the scheduled shift has ended, Plaintiff and the other delivery drivers are

5    required to either finish delivering the remaining packages or return them to the distribution center.

6        61)    Plaintiff and the other delivery drivers will be subject to termination if they do not

7    accept the entire load Defendants have designated for their shift.  Plaintiff and the other delivery

8    drivers will also be subject to termination if they consistently do not make an attempt to deliver all

9    packages assigned to them.

10       62)    Plaintiff and the other delivery drivers are encouraged to finish deliveries once their

11   block of time has ended rather than returning them to the distribution center.  If they return a certain

12   amount of their packages as undeliverable, they are required to write an email to management to

13   explain why they could not make all the deliveries.  Plaintiff and the other delivery drivers are

14   subjected to termination unless they send management an email explaining why they were unable to

15   make all of their deliveries.

16       63)    Plaintiff and the other delivery drivers are not provided additional compensation for

17   the extra time spent returning to the warehouse at the end of each shift, or for time spent unloading

18   the undeliverable packages. They are likewise not provided additional compensation for the time

19   they have to spend writing emails.

20       64)    Even when Plaintiff and the other delivery drivers complete their assigned deliveries

21   in the time period, they are not compensated for the time spent returning to the general area of the

22   warehouse.  Plaintiff has had to drive up to an hour to get back to the general area of the warehouse

23   after completing his deliveries.

24       65)    Once the time worked outside of the scheduled shifts are considered, Plaintiff and

25   the other delivery drivers make less than $18 an hour.

26       66)    Car maintenance, insurance deductibles, smartphone costs, tolls, gas and other

27   related expenses are not accounted for by the Defendants. Plaintiff and the other delivery drivers are

28   solely responsible for these costs.

67)    Defendants direct Plaintiff and the other delivery drivers through the App to take optimized routes that often require tolls.  If Plaintiff and the other delivery drivers do not take the suggested routes, which require tolls, they risk not being able to complete all the deliveries within the block.

68)    Once car maintenance, insurance deductibles, smartphone usage, tolls, gas and other related expenses are accounted for, Plaintiff's and the other delivery drivers' wages often amount to less than the legally required minimum wage in California of $10.50 per hour.

69)    Defendants have no meal or rest period policies with respect to Plaintiff and the other delivery drivers who are misclassified as independent contractors.

70)    Defendants do not explain procedures for taking meal or rest breaks in any of the training videos that Plaintiff and the other delivery drivers are required to watch.

71)    Although Defendants allow Plaintiff and the other delivery drivers to accept blocks of up to four hours, as well as back-to-back blocks resulting in more than six hours worked, the App provides no means by which Plaintiff and the other delivery drivers can calculate or input a stop for their legally mandated meal and rest breaks.

72)    When Plaintiff and the other delivery drivers accept two or more blocks in a day, they often work more than eight hours in a day.  Defendants do not provide overtime compensation for Plaintiff and the other delivery drivers when this occurs.

73)    Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Defendants were advised by skilled lawyers and other professionals, employees, and advisors knowledgeable about: (1) California wage and hour law; (2) employment and personnel practices; and (3) the requirements of California and federal law.

74)    Plaintiff is informed and believes, and based thereon alleges, that, during all relevant times herein mentioned, Defendants knew or should have known that they had a duty to properly compensate Plaintiff, and that Defendants had the financial ability to pay such compensation, but willfully, knowingly, and intentionally failed to do so in order to increase its profits.

///

///

COMPLAINT FOR PENALTIES, INJUNCTIVE RELIEF AND OTHER EQUITABLE RELIEF

**FIRST CAUSE OF ACTION**
**Civil Penalties Pursuant to California *Labor Code* §§ 2698 et seq.**
**(The Private Attorneys General Act)**
**(Against All Defendants; and on Behalf of Plaintiff and the other Aggrieved Employees)**

75)     Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 74.

76)     Plaintiff has complied with PAGA's administrative requirement in the manner proscribed in California *Labor Code* § 2699.3, including providing notice as set forth in California *Labor Code* § 2699.3(a)(1).  More than sixty-five days have elapsed since the postmark date of the notice provided by Plaintiff pursuant to California *Labor Code* § 2699.3(a)(1).

77)     Plaintiff, by virtue of his employment with Defendants, and the Defendants' failure to: properly classify; pay minimum wages, including lawful overtime compensation; provide all lawful rest breaks and meal periods; and refrain from participating in secret payment of wages, is an Aggrieved Employee with standing to bring an action under PAGA. Plaintiff has satisfied all prerequisites to serve as a representative of the general public to enforce California's labor laws, including, without limitation, the penalty provisions identified in California *Labor Code* §§ 226.8, 210, 225.5, 558 and 2699(f)(2).   Since the LWDA took no steps within the time period required to intervene and because Defendants took no corrective action to remedy the allegations set forth above, Plaintiff will seek any and all penalties otherwise capable of being collected by the Labor Commission and/or the Department of Labor Standards Enforcement (DLSE), as indicated below.

**FIRST PAGA CAUSE OF ACTION**
**Civil Penalties Pursuant to *Labor Code* § 226.8**
**(Willful Misclassification)**
**(Against Defendants and on Behalf of Plaintiff and the other Aggrieved Employees)**

78)     Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 77.

79)     *Labor Code* section 226.8(a) provides:

"It is unlawful for any person or employer to engage in any of the following activities:

(1) Willful misclassification of an individual as an independent contractor.

(2) Charging an individual who has been willfully misclassified as an independent contractor a fee, or making any deductions from compensation, for any purpose,

- 10 -
COMPLAINT FOR PENALTIES, INJUNCTIVE RELIEF AND OTHER EQUITABLE RELIEF

including for goods, materials, space rental, services, government licenses, repairs, equipment maintenance, or fines arising from the individual's employment where any of the acts described in this paragraph would have violated the law if the individual had not been misclassified."

80)    *Labor Code* section 226.8(b) provides:

"If the Labor and Workforce Development Agency or a court issues a determination that a person or employer has engaged in any of the enumerated violations of subdivision (a), the person or employer shall be subject to a civil penalty of not less than five thousand dollars ($5,000) and not more than fifteen thousand dollars ($15,000) for each violation, in addition to any other penalties or fines permitted by law."

81)    *Labor Code* section 226.8(c) provides:

"If the Labor and Workforce Development Agency or a court issues a determination that a person or employer has engaged in any of the enumerated violations of subdivision (a) and the person or employer has engaged in or is engaging in a pattern or practice of these violations, the person or employer shall be subject to a civil penalty of not less than ten thousand dollars ($10,000) and not more than twenty-five thousand dollars ($25,000) for each violation, in addition to any other penalties or fines permitted by law."

82)    *Labor Code* section 226.8(i)(4) defines "willful misclassification" as "avoiding employee status for an individual by voluntarily and knowingly misclassifying that individual as an independent contractor."

83)    Through their extensive policies and procedures, Defendants have the right to, and in fact do, direct and control the manner and means by which the Plaintiff and the other Aggrieved Employees perform their work.

84)    Plaintiff and the other Aggrieved Employees are not free to perform their work using their own methods.  In fact, they are subject to Defendants' constant instruction and supervision through the App and their GPS locations.

85)    Plaintiff and the other Aggrieved Employees provide delivery services which form a large part of Defendants' regular business.

86)    Plaintiff and the other Aggrieved Employees are not free to hire any employees or assign their work at their own choosing.

87)    Plaintiff and the other Aggrieved Employees do not generally hold themselves out to the public as delivery drivers or have separately established businesses as delivery drivers.

88)    Plaintiff and the other Aggrieved Employees do not have any substantial investment which would subject themselves to risk of financial loss.

89)    Many of the other delivery services Defendants provide, outside of the Amazon Flex program, are performed by delivery drivers who are properly classified as employees.

90)    Plaintiff and the other Aggrieved Employees are not engaged in particularly skilled labor when delivering packages for Defendants.

91)    Defendants provide the instrumentalities Plaintiff and the other Aggrieved Employees need to perform their work, including the loading facility, support staff, and logistical support through the App.

92)    As the foregoing demonstrates, Defendants exercise a great amount of control over the work performed by Plaintiff and the other Aggrieved Employees.  Thus, Plaintiff and the other Aggrieved Employees should have been properly classified as employees who were subject to the protections of the *Labor Code* and other California employment laws.

93)    Plaintiff is informed and believes, and based thereon alleges, that, during all relevant times herein mentioned, Defendants knew or should have known that they had a duty to properly classify Plaintiff and the other Aggrieved Employees, but willfully, knowingly, and intentionally avoided the employee status in order to increase their profits.

94)    Defendants have willfully misclassified all of their Amazon Flex drivers, and are thus engaging in a pattern or practice of violating *Labor Code* section 226.8(a).

95)    Defendants have willfully misclassified each and every one of Plaintiff and the other Aggrieved Employees. Plaintiff and the other Aggrieved Employees are thus entitled to collect a civil penalty in the amount of at least $5,000 and not more than $25,000 for each employee.

96)    Plaintiff and the other Aggrieved Employees are also entitled to an award of reasonable attorney's fees and costs, pursuant to *Labor Code* section 2699(g)(1).

### SECOND PAGA CAUSE OF ACTION
**Civil Penalties Pursuant to *Labor Code* § 210**
**Against Defendants and on Behalf of Plaintiff and the other Aggrieved Employees**

97)    Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 96.

98)     *Labor Code* § 210 establishes a civil penalty for violations of *Labor Code* § 204, requiring that earned wages must be paid by no later than the pay period following that in which the wages were earned, in the amount of $100 for each failure to pay each employee in an initial violation; and $200 for each subsequent, or any willful, failure to pay each employee, plus twenty-five (25) percent of the amount unlawfully withheld.

99)     In spite of what they were told, Plaintiff and the other Aggrieved Employees are in fact employees entitled to overtime pay, premium pay for missed breaks, and minimum wages.

**<u>Overtime</u>**

100)     Defendants misclassified Plaintiff and the other Aggrieved Employees, which resulted in Plaintiff and the other Aggrieved Employees not being properly compensated for overtime hours worked.

101)     At all times herein set forth, California *Labor Code* § 1198 has provided that it is unlawful to employ persons for longer than the hours set by the California Industrial Welfare Commission (hereinafter "IWC").

102)     At all times herein set forth, the IWC Wage Order applicable to Plaintiff's and the other Agreed Employees' employment by Defendants has provided that employees working for more than eight (8) hours in a day, or more than forty (40) hours in a workweek, are entitled to payment at the rate one and one-half times his or her regular rate of pay for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a work week.  An employee who works more than twelve (12) hours in a day is entitled to overtime compensation at a rate of twice his or her regular rate of pay.

103)     *Labor Code* section 510 codifies the right to overtime compensation at one and one-half times the regular rate of pay for hours worked in excess of eight (8) in a day or forty (40) in a week, or for the first eight (8) worked on the seventh day of work, and to overtime compensation at twice the regular hourly rate for hours worked in excess of twelve (12) in a day or in excess of eight (8) on the seventh consecutive day of work.

104)     Although Plaintiff and the other Aggrieved Employees work more than eight hours a day or forty hours in a week on occasion, Defendants do not pay any overtime wages to Plaintiff

1  and the other Aggrieved Employees for these hours.

2  **Minimum Wages**

3  105)     Defendants did not provide owed minimum wages to Plaintiff and the other

4  Aggrieved Employees at the end of each applicable pay period.

5  106)     *Labor Code* section 200 defines "wages" as including "all amounts for labor

6  performed by employees of every description, whether the amount is fixed or ascertained by the

7  standard of time, task, piece, commission basis, or other method of calculation. . . . [¶] 'Labor'

8  includes labor, work, or service whether rendered or performed under contract, subcontract,

9  partnership, station plan, or other agreement if the labor to be paid for is performed personally by

10  the person demanding payment."

11  107)     Once car maintenance, insurance, smartphone usage, tolls, gas and other related

12  expenses are accounted for, Plaintiff's and the other delivery drivers' wages often amount to less

13  than the legally required minimum wage in California of $10.50 per hour.  This is especially true

14  when taken into consideration all of the time Plaintiff and the other Aggrieved Employees spend

15  working off the clock.

16  108)     Defendants willfully encourage off-the-clock work for Plaintiff and the other

17  Aggrieved Employees.

18  **Rest Periods**

19  109)     At all times herein set forth, *Labor Code* § 226.7(a) has provided that no employer

20  shall require an employee to work during any rest period mandated by an applicable order of the

21  IWC.

22  110)     In spite of what they are told, Plaintiff and the other Aggrieved Employees are in

23  fact employees entitled to rest periods.

24  111)     Plaintiff and the other Aggrieved Employees worked longer than three and one-half

25  hours without ever receiving the ability to take a legally mandated rest break.

26  112)      Defendant therefore owes rest period premiums for each day that Plaintiff and the

27  other Aggrieved Employees worked more than three and one-half hours without receiving a legally

28  mandated rest break.

113)    Defendant has failed to pay Plaintiff and the other Aggrieved Employees their rest period premiums at the end of each applicable pay period.

**Meal Periods**

114)    At all times herein set forth, California *Labor Code* § 512(a) has provided that an employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than thirty minutes, except that if the total work period per day of the employee is not more than six hours the meal period may be waived by mutual consent of both the employer and the employee.

115)    California *Labor Code* § 512(a) further provides that an employer may not employ an employee for a work period of more than ten hours per day without providing the employee with a second meal period of not less than thirty minutes, except that if the total hours worked is no more than twelve the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

116)    In spite of what they were told, Plaintiff and the other Aggrieved Employees were in fact employees entitled to meal periods.

117)    Plaintiff and the other Aggrieved Employees never signed valid meal-period waivers.

118)    Plaintiff and the other Aggrieved Employees often work shifts longer than five hours without receiving an uninterrupted meal period.  This happens when they work two or more blocks back to back, and also when they work four-hour blocks and spend over one additional hour working "off the clock".

119)    Defendants therefore owe meal period premiums for each day that Plaintiff and the other Aggrieved Employees worked more than five hours without receiving a legally mandated meal period.

120)    Defendants have failed to pay Plaintiff and the other Aggrieved Employees their owed meal period premiums at the end of each applicable pay period.

121)    Plaintiff and the other Aggrieved Employees are thus entitled to collect the civil penalties established by *Labor Code* § 210, which provides for a civil penalty for willful violations

of § 204 in the amount of $100 for each failure to pay each employee in an initial violation; and $200 for each subsequent, or any willful, failure to pay each employee, plus twenty-five (25) percent of the amount unlawfully withheld.

122)    Plaintiff and the other Aggrieved Employees are also entitled to an award of reasonable attorney's fees and costs, pursuant to *Labor Code* § 2699(g)(1).

### THIRD PAGA CAUSE OF ACTION
**Civil Penalties Pursuant to *Labor Code* § 225.5**
**(Secret Payment of a Lower Wage)**
**(Against All Defendants and on Behalf of Plaintiff and the other Aggrieved Employees)**

123)    Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 122.

124)    *Labor Code* § 223 provides that, where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract.

125)    Defendants' failure to pay lawful overtime wages for all hours worked during the workweek, while purporting to pay lawful wages, was and is in violation of *Labor Code* § 223.

126)    Defendants' failure to pay lawful meal and rest break premiums, while purporting to pay lawful wages, was and is in violation of *Labor Code* § 223.

127)    Defendants' failure to pay lawful minimum wages, while purporting to pay lawful wages, was and is in violation of *Labor Code* § 223.

128)    Defendants' failure to pay the advertised rate of 18-25$ per hour, was and is in violation of *Labor Code* § 223.

129)    Defendants provide no record or accounting of the miles driven by Plaintiff and the other Aggrieved Employees during each block. Plaintiff and the other Aggrieved Employees are also not informed of how many packages they will be assigned to deliver, or the number of total miles required to deliver the packages until after they accept each block. Plaintiff is informed and believes that this lack of transparency into the operational costs is in furtherance of Defendants' plan to secretly pay a lower wage.

130)    Defendants' secret payment of wages below the lawfully required and contracted amounts was willful.

131)    Plaintiff and the other Aggrieved Employees are thus entitled to collect the civil penalties established by *Labor Code* § 225.5, which provides for a civil penalty for willful violations of § 223 in the amount of $200 per employee per pay period, plus an additional twenty-five (25) percent of the wages unlawfully withheld.

132)    Plaintiff and the other Aggrieved Employees are also entitled to an award of reasonable attorney's fees and costs, pursuant to *Labor Code* § 2699(g)(1).

<u>**FOURTH PAGA CAUSE OF ACTION**</u>
**Civil Penalties Pursuant to *Labor Code* § 558**
**Against Defendant and on Behalf of Plaintiff and the other Aggrieved Employees**

133)    Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 132.

134)    Pursuant to *Labor Code* § 558(a):

"Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(3) Wages recovered pursuant to this section shall be paid to the affected employee."

135)    Defendants' policies and practices relating to the employment of Plaintiff and the other Aggrieved Employees as described herein has resulted violations of *Labor Code* §§ 510 & 512, and also § 3 of the applicable IWC Wage Orders.  Plaintiff is therefore entitled to collect the civil penalties pursuant to *Labor Code* § 558 on behalf of himself and the other Aggrieved Employees, including all of their unpaid overtime wages.

136)    Plaintiff and the other Aggrieved Employees are also entitled to and seek an award of reasonable attorney's fees and costs, pursuant to *Labor Code* § 2699(g)(1).

<u>**FOURTH PAGA CAUSE OF ACTION**</u>
**Civil Penalties Pursuant to *Labor Code* § 2699(f)(2)**
**Against Defendant and on Behalf of Plaintiff and the other Aggrieved Employees**

137)   Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 136.

138)   *Labor Code* § 2699(f)(2) creates a civil penalty for all *Labor Code* sections which do not already provide for one in the amount of one hundred dollars ($100) for each Aggrieved Employee per pay period for the initial violation and two hundred dollars ($200) for each Aggrieved Employee per pay period for each subsequent violation.

139)   Defendant, by engaging in the conduct described herein, has violated the *Labor Code* sections identified below:

<u>***Labor Code* § 226.7**</u>:

140)   Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 139.

141)   *Labor Code* § 226.7(a) provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the IWC.

142)   As described herein, Defendants failed to provide Plaintiff and the other Aggrieved Employees with all lawful rest breaks, in violation of *Labor Code* § 226.7(a).

143)   Plaintiff is therefore entitled to collect the civil penalties proscribed by *Labor Code* § 2699(f)(2) on behalf of himself and the other Aggrieved Employees.

144)   Plaintiff is also entitled to and seeks reasonable attorneys' fees and costs pursuant to *Labor Code* § 2699(g)(1).

<u>***Labor Code* § 1194**</u>:

145)   Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 144.

146)   *Labor Code* § 1194 makes it unlawful for employers to pay their employees less than the legal minimum wage or legal overtime compensation.

COMPLAINT FOR PENALTIES, INJUNCTIVE RELIEF AND OTHER EQUITABLE RELIEF

147)   As described herein, Defendants failed to pay Plaintiff and the other Aggrieved Employees no less than the legal minimum wage or legal overtime compensation for all hours worked, in violation of § 1194(a).  Plaintiff is therefore entitled to collect the civil penalties proscribed by *Labor Code* §§ 2699(f)(2) on behalf of himself and the other Aggrieved Employees.

148)   Plaintiff is also entitled to and seeks reasonable attorneys' fees and costs pursuant to *Labor Code* § 2699(g)(1).

### *Labor Code* § 1198:

149)   Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 148.

150)   Pursuant to *Labor Code* § 1198, it is unlawful to employ persons for longer than the hours set by the Industrial Welfare Commission or under conditions prohibited by the IWC Wage Order(s).

151)   As described above, Defendants' policies and practices throughout the statutory period resulted in the employment of Plaintiff and the other Aggrieved Employees for "longer hours than those fixed by the order and under the conditions of labor prohibited by the order." In particular, Defendants' policies and practices resulted in violations of §§ 11(A) and 12(A) of the applicable Wage Orders.

152)   By employing Plaintiff and the other Aggrieved Employees for longer hours than those set by the IWC and under conditions prohibited by the IWC Wage Orders, Defendants have violated *Labor Code* § 1198. Plaintiff is therefore entitled to collect the civil penalties proscribed by *Labor Code* § 2699(f)(2) on behalf of himself and all other Aggrieved Employees.

153)   Plaintiff also seeks reasonable attorneys' fees and costs, as provided for in the *Labor Code* § 2699(g)(1).

### SECOND CAUSE OF ACTION
#### Violation of California Business & Professions Code §§ 17200, et seq.
#### (Public Injunctive Relief to Prevent Unfair Competition)
#### (Against All Defendants; and on Behalf of Plaintiff)

154)   Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 153.

COMPLAINT FOR PENALTIES, INJUNCTIVE RELIEF AND OTHER EQUITABLE RELIEF

155)    Plaintiff brings this cause of action on behalf of himself and on behalf of the general public.

156)    The Defendants have joined in the growing movement of employers attempting to shift a large portion of their costs and avoid employment laws by wrongfully misclassifying their employees as independent contractors.

157)    The Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful, and harmful to Plaintiff and the general public.  Plaintiff seeks to enforce important rights affecting the public interest within the meaning of California Code of Civil Procedure § 1021.5.

158)    The Defendants' activities as alleged herein are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code §§ 17200, et seq.

159)    The Defendants' acts constitute violations of, inter alia, California Labor Code §§ 204, 223, 226.7(a), 226.8(a), 510, 512(a), 1194 & 1198.  In addition, a violation of California Business & Professions Code §§ 17200, et seq., may be predicated on the violation of any federal law.

160)    Plaintiff has been personally aggrieved by Defendants' unlawful business acts and practices as alleged herein, including, but not necessarily limited to, the loss of money or property.

161)    Defendants have profited from their unlawful business policies set forth herein.

162)    The foregoing unfair business practices offend the policies of the State of California and the United States.

163)    Pursuant to California Business & Professions Code §§ 17200, et seq., Plaintiff is entitled to a permanent injunction requiring Defendants to refrain from engaging in the deceptive and fraudulent business practices alleged herein; an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and other applicable law; and an award of costs.

164)    Plaintiff is entitled to and requests an injunction preventing Defendants from continuing to misclassify Amazon Flex delivery drivers as independent contractors.

165)    Plaintiff is entitled to and requests an injunction preventing Defendants from continuing to force Amazon Flex drivers to perform work when they are not compensated at the

lawful wage.

166)    Plaintiff is entitled to and requests an injunction preventing Defendants from continuing to force Amazon Flex drivers to perform work when they are not compensated at the advertised wage.

167)    Plaintiff is entitled to and requests an injunction requiring Defendants to state conspicuously in their postings and advertisements for Amazon Flex drivers that the advertised hourly rate does not take costs such as gas, car maintenance, smartphone use, tolls and other applicable costs into consideration.

## REQUEST FOR JURY TRIAL

Plaintiff Requests a Trial by Jury.

## PRAYER FOR RELIEF

Plaintiff prays for relief and judgment against Defendants, jointly and severally, as follows:

1.  For all penalties normally only available to be collected by the Labor Commissioner, as well as those created by California Labor Code §§ 2698 et seq.;

2.  For costs and reasonable attorneys' fees that Plaintiff is entitled to recover pursuant to California Labor Code § 2699(g)(1);

3.  For public injunctive relief to prevent the Defendants' unfair competition;

4.  For attorneys' fees pursuant to Civil Code § 1021.5, and other applicable statutes; and

5.  For such other and further relief that the Court may deem equitable and appropriate.

Dated: August 16, 2017

Respectfully Submitted,

SZMANDA LAW GROUP, P.C.

By: _____
Brett Szmanda
Attorney for Plaintiff Dirk Clinton

- 21 -

COMPLAINT FOR PENALTIES, INJUNCTIVE RELIEF AND OTHER EQUITABLE RELIEF